UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IWALK, INC. and MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiffs and Counterdefendants,<br><br>v.<br><br>ÖSSUR HF and ÖSSUR AMERICAS, INC.,<br><br>    Defendants and Counterclaimants. | Civil Action No. 12-CV-10796 NMG<br><br>Hon. Nathaniel M. Gorton |

# **ÖSSUR'S PRELIMINARY INVALIDITY DISCLOSURES**

Pursuant to the Scheduling Order for Patent Infringement Cases (Dkt. No. 28) and Local Rule 16.6 Supplement at Appendix E, Section A(2), Defendants and Counterclaimants ÖSSUR HF ("Össur hf") and ÖSSUR AMERICAS, INC. ("Össur Americas") (collectively, "Össur") hereby file their Preliminary Invalidity Disclosures for United States Patent No. 5,650,704 (the "'704 patent"). Össur also hereby serves its Preliminary Invalidity Disclosures on Plaintiffs and Counterdefendants IWALK, INC. ("iWalk") and MASSACHUSETTS INSTITUTE OF TECHNOLOGY ("MIT") (collectively, "Plaintiffs").

## I. GENERAL RESERVATION OF RIGHTS

Össur's Preliminary Invalidity Disclosures address only invalidity of the asserted claims of the '704 patent.[1] Össur reserves all of its rights with regards to claim construction, non-infringement, and unenforceability of the '704 patent. Össur notes that Plaintiffs filed their Complaint less than six months ago. Accordingly, these invalidity disclosures are preliminary and are based on Össur's current knowledge and understanding of available and identified information. Össur reserves its rights to freely amend, supplement, and/or materially modify its invalidity disclosures consistent with the Scheduling Order for Patent Infringement Cases entered in this action (Dkt. No. 28). Össur also reserves its rights to amend, supplement, and/or materially modify its invalidity disclosures as new information, through discovery or otherwise, becomes available. Össur's reservation of rights includes, but is not limited to, the right to identify additional prior art. Össur's reservation of rights also includes, but is not limited to, the right to identify additional references and/or combinations of references that alone, or in

---

[1] Attached hereto as Exhibit 1 is a preliminary invalidity chart for the asserted claims of the '704 patent, which is being provided pursuant to the Scheduling Order for Patent Infringement Cases (Dkt. No. 28) and Local Rule 16.6 Supplement at Appendix E, Section A(2). A certified copy of the '704 patent is attached hereto as Exhibit 2 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK000009-31.

combination, render one or more claims of the '704 patent invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.[2]

Össur provides its Preliminary Invalidity Disclosures before any claim construction ruling by this Court. Claim construction, a question of law reserved for this Court, is relevant to Össur's invalidity analysis of the '704 patent. Accordingly, Össur reserves its rights to amend, supplement, and/or materially modify its invalidity disclosures after any claim terms of the '704 patent have been construed by the Court.

Össur also reserves its rights to amend, supplement, and/or materially modify its invalidity disclosures based on any claim construction position that iWalk may take and/or any infringement contention that iWalk may allege. This reservation of rights includes, but is not limited to, the right to assert that a claim is indefinite, not enabled, and/or fails to meet the written description requirement under 35 U.S.C. § 112 during and/or after the claim construction proceedings based on any claim construction position that iWalk may take and/or any infringement contention that iWalk may allege.

## II. THE ASSERTED CLAIMS OF U.S. PATENT NO. 5,650,704 ARE INVALID

A patent is invalid if it fails to meet any of the conditions of patentability identified in 35 U.S.C. §§ 102, 103, and 112. For at least the reasons discussed herein, Claims 1, 5, 6, and 7 of the '704 patent (the "asserted claims") are invalid because they are anticipated by prior art under 35 U.S.C. § 102(b) and/or rendered obvious by prior art under 35 U.S.C. § 103.

---

[2] Össur has produced to Plaintiffs documents bearing Bates numbers ÖSSUR_PK001259-003907. Those documents include a number of prior art references that may be relevant to the invalidity under 35 U.S.C. §§ 102 and/or 103. Össur reserves its rights to amend its invalidity disclosures to explicitly identify and describe any such prior art references that alone, or in combination, render the one or more claims of the '704 patent invalid under 35 U.S.C. § 102 and/or 35 U.S.C. § 103.

### A. Claims 1 And 5 Are Anticipated Under 35 U.S.C § 102(b) By Howard

Claims 1 and 5 of the '704 patent are anticipated by prior art under 35 U.S.C. § 102(b) for at least the reasons explained below.  In particular, a doctoral dissertation by Russell D. Howard, entitled "Joint and Actuator Design for Enhanced Stability in Robotic Force Control," date stamped September 19, 1990 by MIT Libraries, and available at http://hdl.handle.net/1721.1/42467 (hereinafter "Howard"), was published more than a year before the filing date of the '704 patent and discloses each and every limitation of at least Claims 1 and 5 of the '704 patent.[3]

#### 1. Dr. Howard Developed And Disclosed Series Elastic Actuators Nearly Five Years Before The '704 Patent Was Filed

The '704 patent was filed on June 29, 1995 and is directed to an actuator for a robotic element such as an arm, hand, or leg.  *See, e.g.*, Ex. 2 at 15, Col. 2, lines 54-57.  According to the '704 patent, the claimed actuator provides the precise force control required in many robotic applications while protecting its components from system shocks and backlash, thereby reducing the instances of a common mode of actuator failure.  *See id.* at Col. 1, lines 29-39, 47-50, and 60-64.  Figure 1 of the '704 patent is reproduced below.



---

[3] A copy of Howard is attached hereto as Exhibit 4 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK002467-2687.

The claimed "elastic actuator" includes a "motor," a "motor drive transmission connected at an output of the motor," and "at least one elastic element connected in series with the motor drive transmission." *Id.* at 22, Col. 16, lines 2-9. A "single force transducer [is] positioned at a point between a mount for the motor and at least one output of the actuator." *Id.* at Col. 16, lines 15-19. The "force transducer generat[es] a force signal indicating force applied by the elastic element to at least one output of the actuator." *Id.* "An active feedback force controller [is] connected between the force transducer and the motor [and provides] for controlling the motor, based on the force signal." *Id.* at Col. 16, lines 20-22.

The elastic element provides an interface between the transmission and a load, and must be able to act on the load along either direction of an actuation axis. Ex. 2 at 16, Col. 3, lines 45-47 and 22, Col. 16, lines 9-11; *see also* Ex. 3 at 4-5.[4] The load is connected at an "output of the actuator" and is "actuated along either direction of the actuation axis." Ex. 2 at 22, Col. 16, lines 12-14. The feedback force controller adjusts the output from the motor "to deflect the elastic element an amount that produces a desired actuator output force." Ex. 2 at 22, Col. 16, lines 22-24. This output force is "substantially independent of load motion" (*i.e.*, the output force has a linear relationship with load motion). *See id.* at Col. 16, lines 24-25; *see also* Ex. 3 at 5.

Subject matter of the '704 patent corresponds to research described in the thesis of Matthew M. Williamson ("Williamson"), who is identified as an inventor on the face of the '704

---

[4] A copy of MIT's response to an Office Action during prosecution of the '704 patent is attached hereto as Exhibit 3 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK000497-502. Össur's Preliminary Non-Infringement Disclosures provides, *inter alia*, additional discussion of MIT's response to this Office Action.

patent.[5]  Gill A. Pratt ("Pratt"), who is identified as the first inventor on the face of the '704 patent, was Williamson's thesis advisor at MIT.  Pratt and Williamson were not, however, the first researchers at MIT to study series elastic actuators.  For example, almost five years earlier, Russell D. Howard, a doctoral candidate at MIT, developed and tested a series elastic actuator that incorporated, *inter alia*, a motor, a motor drive transmission, an elastic element connected in series with the transmission, a force transducer, and a feedback controller to vary the output of the motor based on the position of the load.  *See generally* Ex. 4 at 94-184; *see also* Ex. 7 at 37 ("Howard . . . built an actuator with a spring in series with an EM motor and transmission.").

Subsequent researchers in the field—including Pratt himself—acknowledged that Howard, and **not Pratt and Williamson**, had first introduced in his doctoral dissertation the elastic actuator claimed in the '704 patent.[6]  For example, Pratt co-authored an article in 1999 stating that "**Howard** introduced the idea of measuring springs in series with an actuator's output by monitoring the displacement between actuator output and motor position."  Ex. 6 at 2 (emphasis added).[7]  Between 1996 and 2000, Pratt supervised doctoral research by David W. Robinson ("Robinson"), whose doctoral dissertation emphasized that "Pratt and Williamson also

---

[5]   A copy of the thesis of Matthew M. Williamson, entitled "Series Elastic Actuators," dated January 20, 1995 and available at http://hdl.handle.net/1721.1/36966, is attached hereto as Exhibit 5 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK000835-917.

[6]   Curiously, Williamson omitted Howard from the literature survey of his master's thesis.  *See* Ex. 5 at 19-21.  In fact, Williamson did not acknowledge Dr. Howard's prior work anywhere in his thesis.  *See id.* at 79-83.

[7]   A copy of the article authored by David W. Robinson, Jerry E. Pratt, Daniel J. Paluska, and Gill A. Pratt, entitled "Series Elastic Actuator Development for a Biomimetic Walking Robot," and available at ftp://www.lcs.mit.edu/people/dwrobin/pdf/robinson_aim99.pdf, is attached hereto as Exhibit 6 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK002963-70.

used elasticity and created an actuator *similar to that of Howard's*." Ex. 7 at 37 (emphasis added).[8]  Pratt described his and Williamson's contribution to the elastic actuator as merely improving the "fidelity" of the force transducer by "directly measuring the strain of [the] spring in series with the transmission and actuator output."  Ex. 6 at 2; *see also* Ex. 7 at 37 ("[Pratt and Williamson] showed that to get a better force measurement for closed-loop control, the strain/deflection of the spring should be measured directly and not as the difference of the motor and output shaft [which was used by Howard].").  This purported improvement, however, is not recited in issued Claim 1, which is the only independent claim of the '704 patent.  *See, e.g.*, Ex. 1 at 22, Col. 16, lines 2-25.  Moreover, the specification of the '704 patent expressly contemplates that the force transducer can be positioned *at any point along the transducer from the mounting of the motor to the actuator output element*."  *Id.* at 18, Col. 7, lines 51-56 (emphasis added).

### 2.    **Howard Anticipates Claims 1 And 5**

A patent claim is anticipated under 35 U.S.C. § 102(b) if a prior art reference "disclose[s] every limitation of the claimed invention, either explicitly or inherently."  *Liebel-Flarshiem Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007).  Howard discloses each and every limitation recited by Claims 1 and 5 of the '704 patent.[9]

/ / /

---

[8]  A copy of the doctoral dissertation of David W. Robinson, entitled "Design and Analysis of Series Elasticity in Closed-Loop Actuator Force Control," dated May 11, 2000, and available at http://hdl.handle.net/1721.1/54838, is attached hereto as Exhibit 7 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK002833-955.

[9]  Howard was listed on an Information Disclosure Statement during prosecution of the patent application that became the '704 patent.  That Howard was cited to the Patent Office does not preclude Howard from being an anticipating prior art reference.  *See, e.g.*, *Liebel-Flarshiem Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381-83 (Fed. Cir. 2007) (affirming district court's grant of summary judgment of invalidity and holding that defendant met its burden of showing anticipation under 35 U.S.C. § 102 based on a reference that was cited to the Patent Office).

As a threshold matter, Howard qualifies as a prior art "printed publication" under 35 U.S.C. § 102(b) because it was accessible to the public prior to June 29, 1994.  *See In re Hall*, 781 F.2d 897, 900 (Fed. Cir. 1986) (rejecting an argument that a thesis document indexed in hard copy form at a single university library was not "publicly accessible").  For example, Howard was submitted to MIT in September of 1990, includes a copyright date of 1990, and bears a date stamp from the "Massachusetts Institute of Technology Libraries" reading September 19, 1990. Ex. 4 at 1.

The research described in Howard was directed to "develop[ing] and evaluat[ing] new design principles to improve the force-control performance of manipulators with transmission dynamics."  Ex. 4 at 17.  The culmination of this research was a "Joint/Actuator Controller Design," which introduced a new robotic manipulator that mechanically decoupled joint and actuator motion by adding a linear elastic element and a joint sensor between the transmission and the actuator output.  *See id.* at 19.  Howard includes a detailed conceptual model of Dr. Howard's "Joint/Actuator Controller Design," and provides experimental data and results collected from an elastically actuated robotic manipulator constructed in order to validate his conceptual model.  *See id.* at 94-184.

### a.   Independent Claim 1 Is Anticipated By Howard

The "Joint/Actuator Controller Design" in Howard discloses, either expressly and/or inherently, all the limitations recited by independent Claim 1 of the '704 patent.  Attached hereto as Exhibit 1 is a chart providing a detailed correspondence between the limitations recited by Claim 1 of the '704 patent and anticipating disclosure of an elastic actuator by Howard.

/ / /

/ / /

For example, Howard's "Joint/Actuator Controller Design" includes a motor and a motor drive transmission, which is connected in series with an elastic element. *See, e.g.*, Ex. 4 at 94 and 167. The elastic element is a "simple linear spring." *Id.* at 96.

The linear spring is positioned to fully support a load connected at an output of the actuator. *See, e.g., id.* at 103 (Fig. 4.2) and 167 (Fig. 5.27). For example, Figure 4.2 of Howard shows how force between the spring and the "link" load, measured at the transmission as $F_{trans}$, acts along either direction of the actuation axis. *Id.* at 103. Figures 4.2 and 5.27 of Howard are reproduced below.



**Figure 4.2:** Transmission Disturbance Model



**Figure 5.27:** Experimental Apparatus, Top View

In Dr. Howard's "Joint/Actuator Controller Design," a force transducer positioned on the actuator measures the force applied by the elastic element to an output of the actuator. *See, e.g.*, *id.* at 105 ("If a force sensor is installed at the joint-axis-end of the transmission, it will measure the compression of the second spring [which is the linear elastic element depicted in Figure 4.3]."). A dual-loop active feedback force controller adjusts the motor, based on input from the force transducer, in order produce an actuator output force that is linearly related to load motion. *See, e.g.*, *id.* at 96 ("The intentionally-added spring can be designed to be linear over the force range of interest and softer than the drive compliance, so that its behavior is dominant.") and 103 ("[t]he force in the decoupling spring is the joint force $F_J$, given by . . . $F_J = k_J(z - x)$," which is a reflection of Hooke's Law). *See also* Ex. 7 at 37 ("[Howard] then measured the relative spring deflection by taking the difference between the motor rotation and output shaft rotation. By controlling this deflection he essentially was controlling the actuator output torque by Hooke's Law: $F = kx$").

        **b.**      **Dependent Claim 5 Is Anticipated By Howard**

Howard also discloses, either expressly and/or inherently, all limitations recited by dependent Claim 5 of the '704 patent. For example, the elastic element in the "Joint/Actuator Controller Design" is a linear spring. *See, e.g.*, Ex. 4 at 94 ("[Decoupling] can be accomplished by simply adding a linear spring in series with the transmission.") and 167 (Fig. 5.27) (depicting two linear drive decoupling springs in series with a gearbox transmission and the actuator output).

Exhibit 1 includes a chart providing a detailed correspondence between the limitations recited by Claim 5 of the '704 patent and anticipating disclosure of an elastic actuator by Howard.

**B.     Claims 6 and 7 Are Rendered Obvious Under 35 U.S.C. § 103**

A patent claim is obvious if the differences between the subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention to a person having ordinary skill in the art.  35 U.S.C. § 103(a).  If the differences between the subject matter and the prior art are no "more than the simple substitution of one known element for another," the patent claim may be obvious.  *See KSR Int'l. Co. v. Teleflex Inc.*, 550 U.S. 398, 417 (2007).

      **1.     Claim 6 Is Rendered Obvious By Howard In View Of Coules**

Claim 6 of the '704 patent requires the elastic element of the claimed actuator to be a torsional spring.  Ex. 2 at 22, Col. 16, lines 36-37.  The use of torsional springs in actuated robotic applications was well-known in the field of robotics at least a decade before the filing date of the '704 patent.  For example, U.S. Patent No. 4,600,357 to Russell G. Coules, entitled "Gripper Force Sensor/Controller for Robotic Arm," has a filing date of February 21, 1984 and issued on July 15, 1986 ("Coules").[10]  Coules discloses a controller for an actuated robotic arm that employs, *inter alia*, a rotary motor coupled to a torsional spring.  *See, e.g.*, Ex. 8 at 2, Fig. 1 and 4, Col. 2, lines 47-48.  Figure 1 of Coules is reproduced below.



---

[10]     U.S. Patent No. 4,600,357 is attached hereto as Exhibit 8 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK003266-72.

Including a torsional spring instead of a linear spring in the "Joint/Actuator Controller Design" disclosed in Howard would have been no more than the simple substitution of one known element for another. Thus, for at least the foregoing reasons, the combination of Howard and Coules renders obvious Claim 6 of the '704 patent under 35 U.S.C. § 103.

Exhibit 1 includes a chart providing a detailed correspondence between the limitations recited by Claim 6 of the '704 patent and the disclosure of Howard and Coules.

### 2. Claim 7 Is Rendered Obvious By Howard In View Of Kremer

Claim 7 of the '704 patent requires that the force signal generated by the force transducer is based on deflection of the elastic element. Ex. 2 at 22, Col. 16, lines 38-40. The practice of using a force transducer to generate a force signal by directly sensing the deflection of an elastic element was taught in the field of robotics at least several years before the filing date of the '704 patent. For example, U.S. Patent No. 4,843,921 to Stephen R. Kremer, entitled "Twisted Cord Actuator," has a filing date of April 19, 1988, issued on July 4, 1989, and was cited by the patent examiner during prosecution of the '704 patent ("Kremer").[11]

Kremer discloses a drive mechanism "for use in actuation of hinged members of robotic, prosthetic, and other like devices." Ex. 9 at Col. 1, lines, 7-8; Abstract. This mechanism includes a motor connected to a rotating output shaft. *Id.* at Col. 2, lines 7-8. The rotating output shaft is coupled to an elastic element comprising two or more resilient cords, such as braided nylon cords. *Id.* at Col. 2, lines 10-15. Rotation of the shaft causes the cords to twist around each other in a helical fashion, thereby effecting movement at a clevis attached to a hinged load member. *Id.* at Col. 2, lines 21-33. Figure 2 of Kremer is reproduced below.

---

[11] U.S. Patent No. 4,843,921 is attached hereto as Exhibit 9 and has been produced to Plaintiffs under Bates numbers ÖSSUR_PK003284-88. Össur's Preliminary Non-Infringement Disclosures provides, *inter alia*, additional discussion of Kremer.



The twisted cords in the embodiment disclosed in Figure 2 of Kremer are "constructed with the addition of a resistance wire," which is labeled as element 23 in the above figure. Ex. 9 at Col. 3, lines 8-10. The resistance wire generates a signal used to "provid[e] feedback for force." *Id.* at Col. 3, lines 10-11. The generated force signal is based on directly sensing deflection of the twisted cord elastic element. *See id.* at 7-8 ("Force at the actuating end can be measured by conventional strain sensor [*sic*] or **designed into the cords**.") (emphasis added). Thus, Kremer discloses an actuated mechanism that generates a force signal for use in controlling a motor, based on directly sensing the deflection of an elastic element.

Directly sensing the deflection of the elastic element with a strain gauge or similar force transducer, as disclosed by Kremer, instead of estimating the deflection of the elastic element by measuring the change in position of the motor, as in the "Joint/Actuator Controller Design" disclosed in Howard, would have been no more than the simple substitution of one known element for another. Thus, for at least the foregoing reasons, the combination of Howard and Kremer renders obvious Claim 7 of the '704 patent under 35 U.S.C. § 103.

Exhibit 1 includes a chart providing a detailed correspondence between the limitations recited by Claim 7 of the '704 patent and the disclosure of Howard and Kremer.

/ / /

## III. **CONCLUSION**

For at least the foregoing reasons, Claims 1 and 5 of the '704 patent are invalid under 35 U.S.C. § 102(b) as anticipated by Howard.  Claim 6 of the '704 patent is invalid under 35 U.S.C. § 103(a) as obvious over Howard in view of Coules.  Claim 7 of the '704 patent is invalid under 35 U.S.C. §103(a) as obvious over Howard in view of Kremer.

Dated:  October 29, 2012            */s/ Brenton R. Babcock*
                                    HAYES BOSTOCK & CRONIN LLC
                                    Paul J. Hayes (No. 227000)
                                    phayes@hbcllc.com
                                    Dean G. Bostock (No. 549747)
                                    dbostock@hbcllc.com
                                    Paul J. Cronin (No. 641230)
                                    pcronin@hbcllc.com
                                    Eugene A. Feher (No. 550762)
                                    efeher@hbcllc.com
                                    300 Brickstone Square, Suite 901
                                    Andover, MA  01810
                                    Telephone:   (978) 809-3850
                                    Facsimile:    (978) 809-3869

                                    KNOBBE, MARTENS, OLSON & BEAR, LLP
                                    Brenton R. Babcock (admitted *pro hac vice*)
                                    brent.babcock@knobbe.com
                                    Nicholas M. Zovko (admitted *pro hac vice*)
                                    nicholas.zovko@knobbe.com
                                    David T. Okano (admitted *pro hac vice*)
                                    david.okano@knobbe.com
                                    2040 Main Street, 14th Floor
                                    Irvine, CA  92614
                                    Telephone:   (949) 760-0404
                                    Facsimile:    (949) 760-9502

                                    Plaintiffs and Counterdefendants,
                                    ÖSSUR HF and ÖSSUR AMERICAS, INC.

**CERTIFICATE OF SERVICE**

    I, Brenton R. Babcock, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on October 29, 2012:

| | |
|---|---|
| Robert B. Lovett<br>Karen L. Burhans<br>COOLEY LLP<br>500 Boylston Street<br>Boston, MA 02116-3736<br>rlovett@cooley.com<br>kburhans@cooley.com | Thomas J. Friel<br>COOLEY LLP<br>101 California Street, 5th Floor<br>San Francisco, CA 94111-5800<br>tfriel@cooley.com |
| Christopher C. Campbell<br>Stephen Smith<br>Scott Cole<br>Alana Martinez<br>COOLEY LLP<br>One Freedom Square<br>11951 Freedom Drive<br>Reston, VA 20190-5656<br>ccampbell@cooley.com<br>stephen.smith@cooley.com<br>scole@cooley.com<br>amartinez@cooley.com | |

                                              */s/ Brenton R. Babcock*
                                              Brenton R. Babcock

14230501